MARY A. DUGGAN

*v.*

HENRY UPPENDAHL et al.

| 197 | 179 |
| 201 | ¹103 |
| 197 | 179 |
| 212 | ²124 |

*Opinion filed June 19, 1902.*

1. DEEDS—*parol evidence not admissible in court of law to change description in deed.* Parol evidence of the acts and conversations of the grantor and grantee prior to the execution of the deed cannot be received to show that the description in the deed is wrong.

2. SAME—*language of deed must govern in an action of ejectment.* As between the grantor and grantee and those in privity with them, the language employed in the deed to describe the premises must control in an action of ejectment.

3. SAME—*description of deed construed.* Under a deed describing one acre of land as "beginning one hundred feet west of the center of the main track of the Peoria, Decatur and Evansville railroad, thence running west on the south line of Walnut street," etc., the beginning point must be ascertained by measuring one hundred feet on the south line of Walnut street directly west from the center of such railroad track; and it is not proper to show, in ejectment, that the grantor and grantee had the line run at right angles with the railroad track, which ran at an angle to Walnut street, one hundred feet in a south-westerly direction until it intersected the south line of Walnut street, which point they took as the place of beginning.

APPEAL from the Circuit Court of Macon county; the Hon. E. P. VAIL, Judge, presiding.

T. F. DREW, and A. G. WEBBER, for appellant.

MILLS BROS., and MILLS & FITZGERALD, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant instituted an action in ejectment against the appellees to recover a small parcel of land twenty-five feet and four inches in width and five hundred and eighteen feet in length, situate adjacent to the right of way of the Peoria, Decatur and Evansville railroad, in the village of Dalton City, in Moultrie county, more particularly described by metes and bounds in the declaration. Trial by jury was waived and the cause was heard

before and submitted to the court for decision. The finding was the defendants, appellees here, were not guilty, and judgment was entered in accordance with such finding. The plaintiff below has brought the record into this court by appeal.

Appellees Henry and John Uppendahl held possession of the disputed premises as tenants of the appellee W. H. Taylor. The appellant and said appellee Taylor each sought to trace title from a common source, namely, the title formerly resting in one James Roney. Roney was the owner of the north-east quarter of section 31, town 15, north, range 4, east of the third principal meridian, in Moultrie county. The track and right of way of the Peoria, Decatur and Evansville Railroad Company passed through the said north-east quarter of said section 31. On the second day of May, 1883, said Roney and wife executed and delivered to one S. D. Moore a deed conveying a portion of said north-west quarter of section 31, described in the deed as follows: "One acre of land described as follows: Beginning one hundred feet west of the center of the main track of the Peoria, Decatur and Evansville railroad; thence running west on the south line of Walnut street ninety-two (92) feet; thence running south-east on a parallel line with the Peoria, Decatur and Evansville railroad track five hundred and eighteen (518) feet; thence running north two hundred and thirteen (213) feet; thence running north-west on a parallel line with said railroad track one hundred and sixty-eight (168) feet; thence running west fifty (50) feet; thence north-west on a parallel line with said railroad track one hundred and twenty-seven (127) feet to the place of beginning, in section number thirty-one (31)," etc. Moore entered into the possession of a parcel of said north-west quarter of said section 31 under this deed, built a lumber shed on the north-westerly corner and constructed a post-and-board fence along the westerly side thereof. This lumber shed is upon the strip sought

to be recovered in this action of ejectment, and such strip so sought to be recovered lies entirely within the enclosure of the post-and-board fence. On the 24th day of September, 1884, said Roney executed and delivered to the appellant a deed conveying to her said north-west quarter of said section 31, except certain portions therein specified, the strip here in controversy not being included in any of such excepted parts of the tract conveyed by the deed. This deed also conveyed block 31 as originally platted in the village of Dalton City, and also other parcels not here involved. The lumber shed and portions of the strip here sought to be recovered are upon said block 31. On the 28th day of June, 1886, said S. D. Moore and wife executed and delivered to the appellee Taylor a deed conveying to him the same parcel of land which Roney had conveyed to Moore, and describing it in the same manner as in the deed from Roney to Moore. In each of these deeds the point of beginning the boundaries of the tract to be conveyed is: "Beginning one hundred feet west of the center of the main track of the Peoria, Decatur and Evansville railroad; thence running west on the south line of Walnut street ninety-two (92) feet," etc. Walnut street runs directly east and west. The main track of the Peoria, Decatur and Evansville railroad runs from the south-east to the north-west and crosses Walnut street at that angle.

The appellant contends that, following the description in the deed, the point of beginning the boundaries of the tract therein described is to be found by drawing a line from the center of the main track of the railroad due west one hundred feet along the south line of Walnut street. If that is the true construction of the description in the deed, the strip of land described in the declaration will be found situate beyond or without the boundaries of the tract described in the deeds from Roney to Moore and Moore to Taylor. The strip described in the declaration, as before said, is included in the description

of the lands conveyed to the appellant by said Roney. We concur in the view advanced by the appellant as to the true mode of ascertaining the beginning point of the boundary of the tract described in these deeds. The language of the deeds is explicit. There is neither room nor need for construction. The starting point is to be found on the south line of Walnut street, one hundred feet due west from the center of the main track of the railroad. Nor, as we understand the argument of counsel, is it otherwise claimed in behalf of the appellees.

The appellees, over the objection of the appellant, were allowed to introduce evidence to show that before the execution of the deed from Roney to Moore, Roney and Moore procured a surveyor and proceeded upon the premises for the purpose of ascertaining and determining the actual boundary lines of the tract to be sold by Roney to Moore; that said parties and the surveyor located the beginning point on the south line of Walnut street at a distance of one hundred feet from the center of the main track of the railroad,—not west therefrom, but at right angles with the railroad,—which would make the starting point south-west from the point in the center of the main track of the railroad; that they placed a stake at this beginning point on Walnut street, surveyed and located from thence, according to the calls now appearing in the description set forth in the deed, and placed stakes at each corner, and that said Moore entered into possession of the tract according to the boundaries and stakes so established by himself and said Roney, and that he retained possession of the said premises, built the lumber shed and the said fence thereon, and continued in the possession thereof until he sold to the appellee Taylor and then delivered the possession thereof to Taylor, who thenceforth held and retained the same up to the time of the beginning of this action.

The point on the south line of Walnut street one hundred feet due west from the center of the main track of

the railroad is twenty-five feet and four inches east of a point reached by drawing a line one hundred feet from the center of the main track of the railroad to a point on the south line of Walnut street at right angles with the line of the railroad. The adoption of the latter means of ascertaining the starting point would operate to extend the boundaries of the south-westerly side of the tract to be conveyed and thereby include the strip in controversy within such boundaries. But to accomplish this the line drawn from the center of the track of the railroad to the south line of Walnut street would not proceed west from the center of the railroad track, but due south-west therefrom. Therefore, the effect of the introduction of this evidence was but to vary and contradict the description of the premises set forth in the deed from Roney to Moore and that from Moore to Taylor. There is no ambiguity or uncertainty in the description in these deeds. The starting point is on the south line of Walnut street, one hundred feet west of the center of the track of the railroad, etc. Parol evidence of the acts and conversations of the grantor and the grantee prior to the execution of the deed cannot be received in a court of law to show that the description written in the deed is an error. As between the grantor and grantees and their privies the language employed in writing and executing the deed must govern in the determination of the issue in an action of ejectment. The rule in other jurisdictions where the distinction between law and equity is not preserved has no application here.

If an error occurred in drafting the deed the parties injuriously affected were not remediless. A court of equity, on proper application, would have restrained the further prosecution of the action of ejectment until the question of reforming the deed to make it express the true intention of the parties thereto could be heard and determined. Whether the rights of others had so intervened as to make it inequitable to reform the deed would

also then arise for decision. Legal titles prevail in eject-
ment, and evidence that might be availed of in a pro-
ceeding in chancery to correct an error in the description
of the premises in a deed is not admissible in an action
of ejectment, but in such action a deed of conveyance
must be given effect according to the proper interpre-
tation and meaning of the language employed in the in-
strument.

It has frequently been declared in this court that if
proprietors of adjoining tracts of land are involved in a
dispute as to the true location of the boundary line be-
tween their lands, or such line is unascertained, they
may by a parol agreement declare the location of such
line, and if they do so and afterwards occupy and pos-
sess their lands in recognition of such agreed line, the
adjustment of the boundary line may become binding on
them as determining the location of the estate of each of
such owners. Counsel for appellees insist the proof in
question produced in the case at bar justified the appli-
cation of this doctrine to the case. Their argument is,
the proof established that Roney and Moore agreed up-
on and designated the boundary lines of the tract which
Roney intended to convey to Moore, and that the subse-
quent possession of each of them was in recognition of
the agreement and adjustment of such boundary lines,
and that they and their privies in title should be deemed
estopped to claim that the true boundary lines of the tract
sold by Roney to Moore are otherwise than as so settled
upon by the parties themselves. The doctrine sought to
be invoked has here no application. The true location of
the line between adjoining premises is a question of fact.
If the respective owners of such premises become involved
in a dispute as to such location, or the line is unascer-
tained, they may settle it by a survey mutually caused
to be made by them, or they may dispense with the ser-
vices of a surveyor and in some other mode or manner
which is mutually satisfactory to them may fix upon the

boundary line between their premises, and if such ascertainment and settling of the boundary line is followed by corresponding acts of possession and ownership, the law will not permit the question as to the location of the boundary line to be re-opened. As we said in *Fisher* v. *Bennehoff*, 121 Ill. 426, "it is the policy of the law to give stability to such agreements and thus prevent litigation." Roney was intending to sell to Moore a tract of land,—part of a larger tract owned by him. The sale was completed and carried into legal consummation by the execution and delivery to Moore, and the acceptance by him, of a deed,—the instrument which the law provides shall be executed and delivered to evidence the transfer of real estate from one person to another. The prior acts and conversations of the parties with reference to the particular premises sold by the one to the other are, in the view of the law, merged in the deed, which was executed for the express purpose of affording legal proof of the transaction between them. That instrument—the deed—must be looked to in an action of ejectment to determine the identity of the parcel of land so transferred by Roney, and parol evidence as to what the parties intended should be conveyed cannot be received to establish that a larger tract than that described in the deed was sold and delivered to the grantee. The deed executed by Roney to Moore did not divest Roney of title to the strip in controversy in the action of ejectment. The deed executed by Roney to the appellant on its face transferred the title thereto to appellant. Proof of the acts and conversations of Roney and Moore with reference to the tract intended to be sold by the former to the latter was incompetent, in a court of law, to vary the legal effect of these instruments.

The judgment must be and is reversed, and the cause will be remanded for further proceedings not inconsistent herewith.                    *Reversed and remanded.*